**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-cv-01387-WJM-MDB

JUNIPER MCGINN,

     Plaintiff,

v.

EL PASO COUNTY, COLORADO, *et al.*,

     Defendants.

---

**DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) and (6)**

---

Defendants El Paso County, Colorado ("El Paso County") and Sheriff Bill Elder ("Elder") respectfully move the Court to dismiss Plaintiff's Complaint (ECF 1) under Fed. R. Civ. P. 12(b)(1) and (6).

**CERTIFICATE OF CONFERRAL**

The undersigned conferred with Plaintiff's counsel about this Motion via email on July 27, 2022. Plaintiff opposes this Motion.

    **I.**    **INTRODUCTION AND STATEMENT OF MATERIAL ALLEGATIONS**

Plaintiff, a transgender female who has been diagnosed with Gender Dysphoria, asserts seven claims for relief under 42 U.S.C. § 1983 ("§ 1983"), the Americans with Disabilities Act ("ADA"), Section 504 of Rehabilitation Act of 1973 ("Rehab Act"), and the Colorado Anti-

Discrimination Act ("CADA") against El Paso County and/or Elder, in his individual capacity and official capacity as the Sheriff of the El Paso County Sheriff's Office ("EPSO").

The Complaint alleges that, on June 2, 2020, Plaintiff was arrested during a protest and taken to the El Paso County Criminal Justice Center ("CJC"). (ECF 1, p. 1 ¶ 1.) She requested to be processed by a female deputy but was told a female deputy would watch her shower and conduct a visual body cavity search of the top half of her body, and a male deputy would watch her shower and conduct a visual body cavity search of the bottom half of her body. (*Id.* at p. 1 ¶ 1, 6 ¶¶ 11-12.) Jane Doe and the John Does then watched Plaintiff shower and viewed Plaintiff during the visual body cavity search, and some of the John Does laughed at Plaintiff. (*Id*. at p. 6 ¶¶ 14-16.) Plaintiff also alleges that she was searched pursuant to an unconstitutional custom or policy of having transgender women searched by both male and female deputies. (*Id*. at pp. 6-7 ¶¶ 20-26.)

Plaintiff's allegations do not state viable constitutional or statutory violations and do not implicate clearly established rights. El Paso County and Elder respectfully ask the Court to grant this Motion and dismiss Plaintiff's claims against them.

## II.   STANDARDS OF REVIEW

This Court set forth the applicable standards of review in *Lima-Marín v. United States*, 2021 WL 463626, at *2-3 (D. Colo. Feb. 9, 2021) (unpublished).

## III.   ARGUMENT

### A. The Claims Asserted Against "El Paso County" Must Be Dismissed

The Court does not have jurisdiction over El Paso County because Plaintiff failed to properly name it as a party. *See Gonzales v. Martinez*, 403 F.3d 1179, 1182 n.7 (10th Cir. 2005) (citing Colo. Rev. Stat. § 30-11-105; *Calahan v. Jefferson Cnty.*, 429 P.2d 301, 302 (Colo. 1967)).

Even if the Court overlooks this jurisdictional flaw, the Complaint fails to state a plausible claim against El Paso County because it is separate from EPSO and is not responsible for CJC's operations. *See Bristol v. Bd. of Cnty. Comm'rs of Clear Creek*, 312 F.3d 1213, 1219 (10th Cir. 2002); Colo. Rev. Stat. § 30-10-511; *Gonzales*, 403 F.3d at 1182 n.7.

### B. The § 1983 Claims Asserted Against Elder Fail to Plausibly Allege His Participation

Personal participation "is essential" to any § 1983 claim. *Henry v. Storey*, 658 F.2d 1235, 1241 (10th Cir. 2011). The Complaint, however, does not allege that Elder personally participated in any constitutional violations. (*See* ECF 1, pp. 6-9 ¶¶ 11-26.) Plaintiff may argue that Elder's personal participation is satisfied under a theory of supervisory liability. *See Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). This requires Plaintiff to first show an underlying constitutional violation and then show: (1) the defendant's personal involvement (which may be satisfied by showing the defendant enacted a "custom or policy"); (2) a causal connection; and (3) a culpable state of mind (*i.e.*, deliberate indifference). *Id.* The Complaint does not clearly articulate § 1983 claims premised upon supervisory liability. (*See* ECF 1, pp. 9-14 ¶¶ 28-64.) Even if it did, the Complaint fails to establish the other necessary elements (*see* § III.C below). Plaintiff's claims against Elder, individually, should thus be dismissed.

### C. Plaintiff Fails to State Claims Under the United States Constitution

#### 1. *Plaintiff's Equal Protection Claim Must Be Dismissed*

The Equal Protection Clause states that "all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). To succeed on an equal protection claim, Plaintiff must allege that she is similarly situated to other detainees and that those detainees received disparate treatment from her. *Fogle v. Pierson*, 435 F.3d 1252, 1261

3

(10th Cir. 2006). Transgender is not a suspect class, so rational basis review applies. *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1985); *Druley v. Paxton*, 601 F. App'x 632, 635-36 (10th Cir. 2015) (unpublished); *Qz'Etax v. Ortiz*, 170 F. App'x 551, 553 (10th Cir. 2006) (unpublished). Thus, Plaintiff must allege facts to overcome a presumption of rationality. *Brown*, 63 F.3d at 971.

Plaintiff appears to allege that subjecting her to a cross-gender visual strip search by male deputies discriminated against her because biologically female detainees are not subjected to the same kind of search. (*See* ECF 1, p. 7 ¶¶ 20-22.) But Plaintiff is not similarly situated to biologically female detainees "in all relevant aspects." *Grissom v. Roberts*, 902 F.3d 1162, 1173 (10th Cir. 2018). Specifically, Plaintiff alleges that she changed her name and dressed in feminine attire, but she does not allege she has developed female primary and/or secondary sex characteristics. (*See* ECF 1, p. 4 ¶ 4.) This differentiates her from the class of biologically female inmates to whom she claims to be similarly situated. *See Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) (slight distinctions between inmates rendered them not similarly situated). Her treatment therefore does not support a discrimination claim.

Plaintiff also attempts to align herself with "other transgender women" by alleging that searches by male deputies amounted to discrimination. (ECF 1, p. 11 ¶ 40; *see* pp. 7-9.) However, Plaintiff fails to establish that other transgender inmates like her were treated differently during intake at CJC. *See Brown v. Montoya*, 662 F.3d 1152, 1172-73 (10th Cir. 2011) (plaintiff must make threshold showing of disparate treatment from others who are similarly situated). Indeed, Plaintiff's allegations do not show that other transgender inmates like her are searched solely by guards who match the inmates' gender identification.

Even if Plaintiff's allegations align her with other similarly situated individuals, they do not overcome the presumption of rationality. Defendants' visual strip search and intake process were rationally related to CJC's safe and secure functioning. Plaintiff's conclusory allegations that Defendant discriminated against her without "a compelling, important, or legitimate governmental interest," (ECF 1, p. 11 ¶ 40), and acted "in reckless and callous indifference" to Plaintiff's rights, (*Id*. at ¶ 41), cite the wrong standard and fail to plausibly allege a cause of action under an equal protection theory. *See Brown*, 662 F.3d at 1172-73. Plaintiff's claim must therefore be dismissed.

2. *Plaintiff Has Not Plausibly Alleged an Unconstitutional Search*

To evaluate the constitutionality of a search, the Court must balance the need for the search against the invasion of personal rights that the search entails. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Relevant factors include the scope of the search, how it was conducted, the justification for initiating it, and the place in which it was conducted. *Id.* Here, Plaintiff is a transgender female. She claims that a female deputy and several male deputies watched her shower upon intake at CJC.[1] (ECF 1, p. 6 ¶ 14.) A female deputy performed a visual strip search of the top half of Plaintiff's body, and male deputies performed a visual strip search of the lower half of Plaintiff's

---

[1] The Complaint does not allege why Plaintiff was required to shower at CJC. Upon information and belief, Plaintiff spoke to a journalist under the pseudonym "Elise" regarding her June 2nd arrest, and said she was decontaminated of OC spray at CJC. *See* Heidi Beedle, Opinion, *LGBTQ Protesters Stand Up, and Get Taken Down*, Colorado Springs Independent Jun. 16, 2020, https://www.csindy.com/opinion/columnists/opinion-lgbtq-protesters-stand-up-and-get-taken-down/article_830d75d4-6d2c-52d5-8b06-bfdb60fc0938.html. These details—which suggest exigent circumstances existed that would affect Plaintiff's § 1983 claims—are omitted from the Complaint. *See Jones v. Harrison*, 864 F.Supp. 166 (D. Kan. 1994) (no violation where male inmate strip searched in presence of female inmate during emergency intervention); *Roberts v. Dep't of Corr.*, No. 0200460, 2002 WL 31677190, at *2-4 (Mass. Super. Oct. 15, 2002) (unpublished) (strip searches of male inmates conducted in view of female officers did not violate inmates' rights due to an emergency); *see also Jaramillo v. GEO Grp., Inc.*, No. CV 15-01019 WJ/KK, 2016 WL 10721257, at *4 (D.N.M. Feb. 4, 2016) (unpublished).

body. (*Id.* ¶¶ 12-16.) Plaintiff alleges that three of the male deputies laughed at her. (*Id.* ¶¶ 15-16.) The Complaint does not describe where Plaintiff was taken afterward, so the Defendants premise their arguments on normal intake procedures for a detainee bound for CJC's general population. As explained below, the *Bell* factors support the constitutionality of Plaintiff's search.

First, the scope and manner of the alleged search were reasonable. Plaintiff's shower and visual strip search occurred for safety and security reasons as she entered CJC. *See Archuleta v. Wagner*, 523 F.3d 1278, 1284 (10th Cir. 2008) (reasonableness of strip search turns in part on whether inmate will be housed in general population). Five CJC deputies were present, but Plaintiff does not allege she was exposed to any inmates or other staff who were not involved in her search. *See Hyberg v. Enslow*, 801 F. App'x 647, 650-51 (10th Cir. 2020) (unpublished) (no plausible claim where inmate was strip searched in a designated area "with limited access for other inmates and staff" before returning to general population). And while Plaintiff complains that three male deputies laughed at her. (ECF 1, p. 6 ¶¶ 15-16.), this does not establish a constitutional violation. *See Adkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir. 1995) (verbal sexual harassment by a prison guard did not violate a constitutional right); *Hyberg*, 801 F. App'x at 650-51.

The justification for Plaintiff's shower and strip search was also strong. Plaintiff was strip searched during intake into CJC to ensure the safety and security of the facility. *See Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 332 (2012) (contraband undermines security when introduced into a secure facility); *see also Hyberg*, 801 F. App'x 650 ("[T]here are obvious security concerns inherent when an inmate will be placed in the general prison population." (citation omitted)). Finally, Plaintiff does not allege that anyone other than the deputies involved saw her

while she showered and was searched. The *Bell* factors support the constitutionality of Plaintiff's search, and the Court must dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6).

### 3. *Plaintiff's Substantive Due Process Claim Also Fails*

Plaintiff alleges that subjecting her to a cross-gender strip search and observing her while she showered violated her right to bodily privacy and integrity under the Fourteenth Amendment's substantive due process guarantee. (ECF 1, pp. 12-14 ¶¶ 52-64.) Substantive due process primarily protects "matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation omitted). Government action violates substantive due process if it "shocks the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). To satisfy this standard, "the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995). In the jail context, actions that shock the conscience include sexual assault and rape of prisoners by guards. *Hall v. Zavaras*, No. 08-cv-00999-DME, 2008 WL 5044553, at *4 (D. Colo. Nov. 19, 2008) (unpublished). The actions alleged here do not rise to such egregious levels. The Court should thus dismiss Plaintiff's substantive due process claim.

### 4. *Elder is Entitled to Qualified Immunity*[2]

Plaintiff's claims fail for another reason: Elder is entitled to qualified immunity. Qualified immunity protects government officials if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020). Once qualified immunity is raised, the plaintiff

---

[2] Although Plaintiff has not identified the Jane and John Does, they would be entitled to qualified immunity for substantially the same reasons discussed in this section.

must show that (1) a constitutional violation occurred, and (2) the right was clearly established at the time of the alleged violation. *Hulen v. Yates*, 322 F.3d 1229, 1237 (10th Cir. 2003). The plaintiff must show that *both* prongs are met to defeat qualified immunity. *See Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009). Plaintiff fails to make such a showing.

Regarding the first prong, Plaintiff has not shown that a constitutional violation occurred, as explained above. Elder is thus entitled to qualified immunity. *See Herrera*, 589 F.3d at 1070. As for the second prong, Plaintiff has not shown that the rights in question were clearly established. A right is clearly established if the law was "sufficiently clear that a reasonable official would have understood that his conduct violated the right." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001). This generally requires a "Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id*. (internal quotations omitted).

Here, it was not clearly established at the time of Plaintiff's intake at CJC that the cross-gender visual strip search of a transgender inmate who identifies as female violates a constitutional right. *See Naisha v. Metzger*, 2021 WL 5632063, at *1-2 (3d Cir. 2021) (unpublished) (granting qualified immunity to male deputy who conducted visual strip search of transgender inmate and laughed at inmate, because law was not clearly established); *see generally Carter-el v. Boyer*, No. 1:19cv243 (TSE/MSN), 2020 WL 939289, at *4 (E.D. Va. Feb. 25, 2020) (unpublished) (observing that "little if any case law addresses the issue of the propriety of cross-gender searches of transgender inmates."). Plaintiff's allegations of verbal harassment during the search do not alter this conclusion. *See Adkins*, 59 F.3d at 1037-38. Elder is thus entitled to qualified immunity.

5. *Plaintiff Fails to State Municipal Liability Claims*[3]

Plaintiff raises claims against El Paso County and EPSO. Municipalities cannot be liable for the unconstitutional actions of their employees under a theory of *respondeat superior*. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 405 (1997). Municipalities may instead be liable under § 1983 when the execution of a policy or custom "inflicts the injury" upon the plaintiff. *Monell v. Dep't of Sec. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). This Court recently set fort the law applicable to *Monell* claims in *Estate of Burnett v. City of Colorado Springs*, 2022 WL 2904705, at *11-13 (D. Colo. July 22, 2022) (unpublished).

Here, the Complaint makes passing references to formal policies but fails to identify any specific EPSO policy that caused the alleged constitutional violations. (*See* ECF 1, pp. 6-8, 12-14.) Plaintiff cannot succeed under this theory of municipal liability. *See Carney v. City and Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).

Plaintiff alleges that her cross-gender visual strip search was part of a custom. She cites a single instance in which a transgender woman was subjected to a cross-gender visual strip search at CJC, one month after Plaintiff. (ECF 1, pp. 7-9). This lone instance "does not describe a pattern of violations" that could support municipal liability. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1287 (10th Cir. 2019) (quotation and citations omitted).

The Complaint does not explicitly assert municipal liability under a failure to train or supervise theory. Even if it did, this theory would fail. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v.*

---

[3] Plaintiff's municipal liability claims first fail because there is no underlying constitutional violation as described above.

*Thompson*, 563 U.S. 51, 61 (2011). To establish a failure to train or supervise claim, a plaintiff must show that the alleged failure "amounts to deliberate indifference to the rights of the persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference in this context ordinarily requires showing a pattern of similar constitutional violations by untrained employees. *See Brown*, 520 U.S. at 407-08.

Here, the Complaint identifies one other instance of a cross-gender visual strip search, which does not establish a pattern. *Waller*, 932 F.3d at 1287. Plaintiff may argue that her allegations satisfy the "narrow range of circumstances" in which a single incident may show deliberate indifference. *Connick*, 536 U.S. at 64. This argument would fail because numerous courts have found that a municipal entity cannot be deliberately indifferent where the right asserted is not clearly established, as is the case here. *See Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994-96 (6th Cir. 2017) ("But a municipal policymaker cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established.") (internal citations and quotations omitted); *Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018); *Townes v. City of New York*, 176 F.3d 138, 143-44 (2d Cir. 1999); *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 393 (8th Cir. 2007); *Moya v. City of Clovis*, No. 18-494-GBW-KRS, 2019 WL 6255217, at * 10 (D.N.M. Nov. 22, 2019) (unpublished); *see also Montoya v. City & Cnty. of Denver*, No. 16-cv-01457-JLK, 2021 WL 8087380, at *2 n.3 (D. Colo. July 27, 2021) (unpublished) (whether a municipal entity can be deliberately indifferent to a right that is not clearly established was left open by *Contreras ex rel. A.L. v. Dona Ana Cnty. Comm'rs*, 965 F.3d 114, 1124 (10th Cir. 2020) (Carson, J. concurring)).

The Complaint also alludes to municipal liability via a final decision by a policymaker. (*See* ECF 1, p. 2 ¶ 5, p. 11 ¶ 40). But "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404 (emphasis in original). In other words, Plaintiff must show that a final policymaker's decision directly deprived her of a constitutional right or was made with deliberate indifference. *Id*. at 404-08. Because the Complaint does not plausibly allege that Elder's decisions pertained directly to Plaintiff, she must show that his decisions were made with deliberate indifference. *See id*. at 404-07. But in situations like this, where the existence of the alleged right is unclear, policymakers cannot act with deliberate indifference. *See Moya*, 2019 WL 6255217, at *10 ("But a municipal policymaker cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established.") (quoting *Arrington-Bey*, 858 F.3d at 994 (6th Cir. 2017); *see also Szbala v. City of Brooklyn Park,* 486 F.3d 385, 292 (8th Cir. 2007).

Absent an articulable theory of municipal liability, the Complaint fails to satisfy the "rigorous standards…of causation." *Brown*, 520 U.S. at 405. The Court should dismiss Plaintiff's § 1983 claims asserted against EPSO and El Paso County.

### D. The Claims Asserted Under the ADA and Rehab Act Must Be Dismissed

To succeed under Title II of the ADA and the Rehab Act, a plaintiff to show that: (1) she is a qualified individual with a disability; (2) she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) her exclusion, denial, or discrimination was by

reason (or sole reason) of her disability. *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1312-13 (10th Cir. 2021). Plaintiff's ADA and Rehab Act claims must be dismissed because they are asserted against El Paso County only, *see* § III.A. above,[4] and for the following reasons.

### 1. *Plaintiff Fails to Allege a Disability*

"[G]ender identity disorders not resulting from physical impairments" are categorically excluded from the ADA's definition of "disability." 42 U.S.C. § 12211(b)(1). "No federal court of appeals or the Supreme Court has…addressed whether [this] exclusion applies to gender dysphoria." *Venson v. Gregson*, 2021 WL 673371, at *2 (S.D. Ill. Feb. 22, 2021) (unpublished). In the 2021 case *Doe v. Pa. Dep't of Corr.*, the district court for the Western District of Pennsylvania surveyed decisions from across the country and identified three general approaches to this issue. "The first, and apparently the majority approach, views the [ADA's] language as expressing Congress' intent to exclude from the ADA's protection both disabling and non-disabling gender identity disorders [including gender dysphoria] that do not result from physical impairment." 2021 WL 1583556, at *8-9 (W.D. Pa. Feb. 19, 2021) (unpublished) (quotations omitted). The second approach holds that gender dysphoria falls outside of the ADA exclusion so long as the condition substantially limits a major life activity, but this approach has drawn subsequent criticism for "lacking any textual or other support." *Id.* at *9 (citations omitted). The "third approach recognizes a physical etiology underlying gender dysphoria may exist to place the condition outside of the exclusion of gender identity disorders 'not resulting from physical

---

[4] Because El Paso County and EPSO are separate entities, the Complaint also fails to plausibly allege that El Paso County had knowledge of Plaintiff's disability and her need for an accommodation. *See Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1196 (10th Cir. 2007).

impairments'…[But] [t]his third approach acknowledges that courts typically lack sufficient expertise…to determine the cause or causes of gender dysphoria." *Id.*

The Court should adopt the first approach because it is in line with *Michaels v. Akal Sec., Inc.*, 2010 WL 2573988, at *6 (D. Colo. Jun. 24, 2010) ("Gender dysphoria, as a gender identity disorder, is specifically exempted as a disability…") (unpublished). Thus, to survive dismissal, the Complaint must plausibly allege that Plaintiff's gender dysphoria results from a physical impairment. The Complaint contains no such plausible allegations. Consequently, Plaintiff's ADA and Rehab Act claims should be dismissed.

### 2. *Plaintiff Fails to Allege Causation*

In its 2021 *Crane* decision, the Tenth Circuit addressed the divergent causal standards applicable to claims asserted under Title II of the ADA and the Rehab Act, noting that "the ADA merely requires the plaintiff's disability be a but-for cause (i.e., 'by reason of') of the discrimination, rather than—as the Rehab[] Act requires—its sole cause (i.e., 'solely by reason of')." 15 F.4th at 1312-13 (internal citations omitted). The Complaint does not satisfy either causal standard because it asserts that Plaintiff's transgender status—not Gender Dysphoria, the alleged disability—was the reason for her treatment in CJC (*See* ECF 1, p. 1 ¶ 1, p. 7 ¶¶ 21-22, p. 10 ¶ 35, p. 12 ¶ 48, p. 13 ¶ 55).

### 3. *Plaintiff's Damages Are Limited*

In *Cummings v. Premier Rehab Keller, P.L.L.C.*, the Supreme Court ruled that the remedies available under the Rehab Act are limited to those traditionally available in breach of contract suits, which do not include emotional distress damages. 142 S. Ct. 1562, 1571-76 (2022). Based on the Supreme Court's reasoning, other damages generally unavailable in breach of contract claims, like those for pain and suffering, should also be unavailable under the Rehab Act. *See, e.g.*,

*Cianciott v. Hospice Care Network*, 927 N.Y.S.2d 779, 785 (N.Y.S. July 26, 2011) ("[P]ain and suffering damages are not ordinarily recoverable in breach of contract actions."). Furthermore, since federal law limits the remedies available under Title II of the ADA to those remedies available under the Rehab Act, *see* 42 U.S.C. § 12133 and *Barnes v. Gorman*, 536 U.S. 181, 184-85 (2002), *Cumming*'s holding should apply with equal force to Title II of the ADA, thus barring Claims 6 and 7 to the extent they seek damages generally unavailable in breach of contract actions.

### 4. *Plaintiff Cannot Recover Compensatory Damages*

Compensatory damages are only available under the ADA and Rehab Act in cases of intentional discrimination, which can be inferred from a defendant's deliberate indifference to a strong likelihood that the pursuit of its questioned policies will likely result in a violation of federally protected rights. *Havens v. Colo. Dep't. of Corr.*, 897 F.3d 1250, 1264 (10th Cir. 2018). Here, the existence of the right alleged—Gender Dysphoria's protection under the ADA and Rehab Act—is unclear.  *See* § III.C.4 above.  In similarly murky circumstances, the Eighth Circuit applied § 1983 principles to find that a municipality was not deliberately indifferent under the ADA and Rehab Act where the right in question was unclear. *Roberts v. City of Omaha*, 723 F.3d 966, 975-76 (8th Cir. 2013). Applying *Roberts* to this case, Plaintiff has failed to plead deliberate indifference and cannot recover compensatory damages.

### E.  **The Claims Asserted Under CADA Must be Dismissed**

CADA states that "[n]o person may file a civil action in a district court in this state based on an alleged discriminatory or unfair practice prohibited by parts 4 to 7 of this article without first exhausting the proceedings and remedies available to him under this part 3…" Colo. Rev. Stat. § 24-34-306(14).  Claims 6 and 7 are subject to CADA's exhaustion requirement because they

14

assert discrimination in a place of public accommodation in violation of Colo. Rev. Stat. § 24-34-601(2)(a) (*i.e.* Part 6 of CADA). (ECF 1, pp. 22-23 ¶¶ 104-05, 110-11); *Mullen v. S. Denver Rehab., LLC*, 2020 WL 2557501, at *18 (D. Colo. May 20, 2020) (unpublished); *Brooke v. Restaurant Servs., Inc.*, 906 P.2d 66, 70 (Colo. 1995). Plaintiff did not, however, exhaust her administrative remedies under CADA before filing this lawsuit. But even if she did, the Complaint still fails to state a violation of CADA based upon Plaintiff's alleged disability for the reasons set forth above in §III.D.2, including a failure to establish causation.

## IV.    CONCLUSION

The El Paso County Defendants respectfully ask the Court to enter an order dismissing Plaintiff's Complaint with prejudice and granting any other relief the Court deems just and proper.

Dated this 1st day of August 2022.

By: s/ *Steven W. Martyn*
Steven W. Martyn, #47429
Assistant County Attorney
El Paso County Attorney's Office
200 S. Cascade Ave.
Colorado Springs, CO 80903
(719) 520-6485 (Main Office Line)
(719) 520-7386 (Office)
(719) 465-4196 (Mobile)
Email: stevenmartyn@elpasoco.com

s/ *Nathan J. Whitney*
Nathan J. Whitney, #39002
Senior Assistant County Attorney
El Paso County Attorney's Office
200 S. Cascade Ave.
Colorado Springs, CO 80903
(719) 520-6485 (Main Office Line)
(719) 520-6597 (Office)
(719) 494-5582 (Mobile)
Email: nathanwhitney@elpasoco.com

*Attorneys for El Paso County Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will serve a copy on all CM/ECF participants as follows:

Andy McNulty
Mari Newman
1543 Champa Street, Suite 400
Denver, CO 80202

*Attorneys for Plaintiff*

By: s/ *Steven W. Martyn*
Steven W. Martyn, #47429
Assistant County Attorney