# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01387-WJM-MDB

JUNIPER MCGINN,

    Plaintiff,

v.

EL PASO COUNTY, COLORADO, *et al.*,

    Defendants.

---

## SCHEDULING ORDER

---

### 1. DATE OF CONFERENCE

There currently is no Scheduling Conference scheduled by the Court. Counsel for the parties are:

| | |
|---|---|
| Andrew McNulty | Nathan Whitney |
| Mari Newman | Steven W. Martyn |
| KILLMER, LANE & NEWMAN, LLP | El Paso County Attorney |
| 1543 Champa Street, Suite 400 | 200 S. Cascade Ave. |
| Denver, CO 80202 | Colorado Springs, CO 80903 |
| Phone: (303) 571-1000 | Phone: (719) 520-6458 |
| Fax: (303) 571-1001 | nathanwhitney@elpasoco.com |
| amcnulty@kln-law.com | stevenmartyn@elpasoco.com |
| mnewman@kln-law.com | |
| | *Counsel for El Paso County Defendants* |
| *Counsel for Plaintiff* | |

### 2. STATEMENT OF JURISDICTION

Jurisdiction is invoked pursuant to 28 U.S.C. § 1331. This action is authorized and instituted pursuant to 42 U.S.C. § 1983. Jurisdiction supporting Plaintiff's claims for attorney's fees and costs is conferred by 42 U.S.C. § 1988. Venue is proper in the District of Colorado

1

pursuant to 28 U.S.C. §1391(b), as all the events described occurred in Colorado.

### 3. STATEMENT OF CLAIMS AND DEFENSES

a. **Plaintiff's statement:**

**Gender Identity, Gender Dysphoria, and the incarceration of transgender women like Ms. McGinn.**

Gender identity is an innate, internal sense of one's sex—e.g., being male or female—and is a basic part of every person's core identity. Everyone has a gender identity. Most people's gender identity is consistent with the sex they were assigned at birth ("assigned sex"). Transgender people, however, have a gender identity that is different from their assigned sex. For example, a transgender woman is a woman who was assigned male at birth and has a female gender identity. A cisgender woman is a woman who was assigned female at birth and has a female gender identity.

The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) ("DSM-5") recognizes that being transgender is not itself a disability, but that the clinically relevant condition is the "Gender Dysphoria" experienced by many individuals whose gender identity conflicts with their assigned sex. Gender Dysphoria is defined as the significant distress that may accompany the incongruence between a transgender person's gender identity and assigned sex. This distress limits major life activities and is therefore a disability. A transgender person's Gender Dysphoria can be alleviated when the person is able to live, and be treated by others, consistently with the person's gender identity.

The accepted course of medical treatment to alleviate the symptoms of Gender Dysphoria often involves allowing the individual to live as his or her chosen gender through one or more of the following treatments: changes in gender expression and role; dressing, grooming, and

2

otherwise outwardly presenting in a manner consistent with one's gender identity; hormone therapy; being treated in accordance with their gender identity; psychotherapy; and, in some cases, surgery to change primary and/or secondary sex characteristics.

Ms. McGinn has been diagnosed with Gender Dysphoria and has been openly living as a transgender woman in the community. As part of her medically supervised treatment, she changed her name and altered her physical appearance to conform to her female gender identity, including dressing in feminine attire.

Defendants were aware of Ms. McGinn's Gender Dysphoria and her identity as a transgender woman, and Defendants perceived Ms. McGinn as having Gender Dysphoria and being a transgender woman.

Ms. McGinn's Gender Dysphoria is a mental impairment that substantially limits one or more major life activities.

Ms. McGinn is substantially limited in her ability to care for herself because she requires regular, ongoing, and life-long medical treatment. She is also substantially limited in other major life activities, such as eating, sleeping, learning, concentrating, thinking, communicating, and interacting with others because of distress associated with her Gender Dysphoria.

Ms. McGinn is substantially limited in the operation of major bodily functions, including neurological function, brain function, endocrine function, and reproductive function.

Ms. McGinn has a history of Gender Dysphoria, which substantially limits one or more major life activities, including the ability to care for herself, eating, sleeping, learning, concentrating, thinking, communicating, interacting with others, and reproducing, and which

substantially limits neurological function, brain function, endocrine function, and reproductive function.

When a transgender person's Gender Dysphoria is left untreated, or is inadequately treated, the consequences can be dire. Symptoms of untreated Gender Dysphoria often include intense emotional suffering, anxiety and depression, suicidality, and thoughts or acts of self-harm. All of those symptoms can be mitigated, and often prevented altogether, for transgender people with access to appropriate individualized treatment.

**Ms. McGinn is subjected to an unconstitutional cross-gender visual body-cavity searches pursuant to El Paso County's official policy that male guards conduct visual body-cavity searches of transgender women inmates.**

After being unlawfully arrested by during a Black Lives Matter protest, Ms. McGinn was placed into a mass arrest van and taken to the El Paso County Jail. On arrival at the Jail, Ms. McGinn was asked if she wanted a man or a woman to process her. Ms. McGinn responded that she wanted a woman to process her into the Jail.

Ms. McGinn was told that, per El Paso County policy, a female deputy would watch her shower, and conduct a visual body-cavity search of, the top half of her body then a male deputy would watch her shower, and conduct a visual body-cavity search of, the bottom half of her body.

In other words, despite her explicit request to have only a woman deputy present during her shower and visual body-cavity search, per El Paso County policy, custom, and practice, multiple male deputies watched her shower.

Jane Doe and John Does 1-4 watched Ms. McGinn shower. Jane Doe and John Does 1-4 viewed her naked body during the visual body-cavity search.

4

Defendant John Does 2-4 watched and laughed at Ms. McGinn as she showered. Ms. McGinn was humiliated and kept her head down as she showered.

After she was done showering, Defendant John Does 2-4 continued to laugh at Ms. McGinn as she was told to squat and move her genitals while Defendants John Does 1-4 and Jane Doe visually inspected her naked body and performed a visual body-cavity search of Ms. McGinn.

There was penological purpose for conducting a cross-gender visual body-cavity search of Ms. McGinn. There was no basis to have five deputies watching Ms. McGinn as she showered and was subjected to a visual body-cavity search. And, there was certainly no penological purpose for any of the actions taken by Defendant John Does 2-4.

Defendant Jane Doe did nothing to intervene to make sure that Defendants John Does 1-4 were prevented from seeing Ms. McGinn's naked body.

El Paso County officials' derogatory visual body-cavity search of Ms. McGinn lead her to suffer significant emotional distress.

At the El Paso County Jail, female deputies conduct visual body-cavity searches of women and male deputies conduct visual body-cavity searches of men. The only time that cross-gender visual body-cavity searches occur is when El Paso County Jail deputies are searching transgender women.

It is El Paso County's official policy that transgender women (including those with Gender Dysphoria) are searched, including visual body-cavity searched, by male staff and not by female staff. No female guards are required to be present during searches (including visual body-

cavity searches). Transgender women in El Paso County custody have routinely been subjected to searches, including visual body-cavity searches, by male staff.

El Paso County's decision to require that Ms. McGinn be subjected to a cross-gender visual body-cavity search, along with the decision to require that she be observed while she showered by male deputies, simply because she is a transgender woman, was a discriminatory action and a failure to reasonably accommodate Ms. McGinn's diagnosed Gender Dysphoria.

**It is customary for male El Paso County deputies to humiliate transgender woman inmates while conducting the cross-gender visual body-cavity searches, and to not face consequences for these discriminatory acts.**

Ms. McGinn's cross-gender body-cavity search was not the only time that an El Paso County deputy conducted an unconstitutional cross-gender body-cavity search of a transgender woman inmate.

On July 20, 2020, a male deputy at the El Paso County Jail performed a visual body-cavity search of a transgender woman named Darlene Griffith in a similarly humiliating manner to Ms. McGinn. When Ms. Griffith was booked into the jail, she was taken to the strip out room. Before Ms. Griffith began stripping off her clothes, both a male and female deputy arrived. When Ms. Griffith saw that both a male and female deputy would be conducting her visual body-cavity search, Ms. Griffith protested and asked that the male deputy leave. Ms. Griffith told both deputies that, because she is transgender, she does not want a male deputy to be present. The female deputy told Ms. Griffith that, per her sergeant's orders, the male deputy would stay throughout the entire strip out process. The female deputy told Ms. Griffith that because she was "still a male" in El Paso County's "system" that a male deputy would be conducting her visual body-cavity search pursuant to El Paso County policy and procedure. Ms. Griffith again asked

6

that the female deputy conduct the visual body-cavity search because Ms. Griffith is a transgender woman. The female deputy refused.

The female deputy then told Ms. Griffith to take off her shirt, which she did. After examining Ms. Griffith's breasts, with the male deputy present, the female deputy gave Ms. Griffith a sports bra and then left the room. As the female deputy left the room, she told the male deputy, "*he* is all yours now to strip out." After the female deputy left the room, the male deputy ordered Ms. Griffith to take off her socks, pants, and panties, and then place her hands on the wall. The male deputy then told Ms. Griffith to step back, bend over, and "spread [her] sexy cheeks." Ms. Griffith protested the male deputy's use of this derogatory language, but complied with his directive. The male deputy then told Ms. Griffith that he was "going to go balls deep in that ass" while grabbing his own penis in view of Ms. Griffith. The male deputy was extremely aggressive while searching Ms. Griffith's genitals and making these comments. After the male deputy was finished sexually harassing Ms. Griffith, he told her that she had better not tell anyone about what he did and said to her.

What happened to Ms. Griffith is another example of the derogatory actions that are customarily inflicted on transgender women at the El Paso County Jail.

The El Paso County Jail has never imposed any discipline on the deputies who conducted the derogatory and unconstitutional cross-gender visual body-cavity searches of Ms. McGinn and Ms. Griffith.

b. **El Paso County Defendants' Statement:**

The El Paso County Defendants deny that they violated Ms. McGinn's rights under the United States Constitution, the Colorado Constitution, the Americans with Disabilities Act, the

7

Rehabilitation Act of 1973, the Colorado Anti-Discrimination Act, or any other law. The El Paso County Defendants further deny that there was an unconstitutional custom, policy, or practice of improperly housing transgender inmates in the El Paso County Criminal Justice Center or treating inmates' gender dysphoria. Plaintiff's claims further fail as to the individual El Paso County Defendants because they are entitled to qualified immunity. The El Paso County Defendants have not yet filed an Answer but reserves the right to assert additional denials and affirmative defenses.

The El Paso County Defendants will file a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6) in which they assert the defense of qualified immunity. The El Paso County Defendants will also file a Motion to Stay Discovery pending a ruling on the Motion to Dismiss.

### 4.  UNDISPUTED FACTS

The following facts are undisputed:

a.  At all times relevant to the subject matter of this litigation, Juniper McGinn was a citizen of the United States of America and a resident of the State of Colorado.

b.  At all times relevant to the subject matter of this litigation, Sheriff Bill Elder was a citizen of the United States and a resident of the State of Colorado.

### 5.  COMPUTATION OF DAMAGES

**Plaintiff:** Plaintiff claims appropriate relief at law and equity; declaratory relief and other appropriate equitable relief; economic losses on all claims as allowed by law; compensatory and consequential damages, including damages for emotional and physical distress, humiliation, and other pain and suffering on all claims allowed by law in an amount to be determined at trial; punitive damages on all claims allowed by law and in an amount to be

determined at trial; attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law; pre- and post-judgment interest at the appropriate lawful rate; any further relief that this court deems just and proper, and any other relief as allowed by law.

Counsel for Plaintiff are in the process of gathering information relevant to future economic damages. A more precise computation of Plaintiff's damages, to the extent Plaintiff's damages are subject to such computation, will be provided during the normal course of discovery, and will be determined by a jury in its sound discretion following a presentation of the evidence at trial in this matter.

Damages for emotional distress are not susceptible to the type of calculation contemplated by Rule 26(a)(1). "[C]ompensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury." *Williams v. Trader Pub. Co.*, 218 F.3d 481, 487 n.3 (5th Cir. 2000).

Punitive damages are sought based upon the egregious nature of the conduct of the Defendants as set forth in the complaint on the federal claims against Defendants and the need to restrain such conduct in the future. Calculation of these damages and entitlements is premature and not susceptible to the type of calculation contemplated by Rule 26(a)(1).

**El Paso County Defendants:** The El Paso County Defendants do not seek damages but will seek to recover their attorneys' fees and costs as permitted by law.

### 6.    REPORT OF PRE-CONFERENCE DISCOVERY & MEETING UNDER Fed. R. Civ. P. 26(f)

a.  Date of Rule 26(f) meeting: **August 11, 2022.**

b.  Names of each participant and each party represented: Counsel for Plaintiff, Andy

McNulty of Killmer, Lane & Newman, LLP met with counsel for El Paso County Defendants, Nathan Whitney and Steven Martyn, El Paso County Attorney's Office.

    c.    Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1): None.

    d.    Statement as to when Rule 26(a)(1) disclosures were made or will be made: Rule 26(a)(1) disclosures will be made on or before **September 9, 2022**.

    e.    The parties have not agreed to conduct informal discovery but will attempt to cooperate with informal requests for discrete documents to the extent feasible as the case unfolds.

    f.    The parties agree to take all reasonable steps to reduce discovery and reduce costs.

    g.    The parties do not anticipate that this case will involve extensive amounts of electronically stored information.  The parties have taken steps to preserve any emails and other electronically stored information which may exist regarding this matter through the issuance of litigation hold letters.  The parties agree that all electronically stored information may be produced either in paper or portable document format (".pdf"), and that if issues arise that cause a party to believe that it needs a particular document or set of documents in another format, including native format, that party will request production in such format and state the reasons for the request. For efficiency the parties agree that they will produce documents electronically in .pdf format by either CD, DVD, email, flash drive, secure FTP network or a Onedrive/Dropbox link.  A party will only be required to produce electronically stored information in an electronic form if specifically requested with the form specified (i.e. with or without metadata, PDF or native form).  The parties further agree to work cooperatively to avoid

discovery disputes related to electronically stored information and to be guided by the Sedona Principles to resolve any disputes, which may arise.

h.  Plaintiff had the records related to her resulting criminal case sealed. Upon information and belief, the sealing order prohibits EPSO from disseminating the booking records related to Plaintiff. As such, the parties will need to obtain an order from this Court or the state court in which Plaintiff's criminal case was sealed permitting EPSO to disclose the records.

### 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

### 8. DISCOVERY LIMITATIONS

a.  ~~Plaintiff proposes to limit the length of depositions to 7 hours. El Paso County Defendants propose that each side be able to take one deposition of 7 hours and that all other depositions be limited to 4 hours.~~

a.  **Depositions shall not exceed seven (7) hours, without prior agreement or absent leave of court.**

b.  Plaintiff may serve 25 interrogatories to Defendants, collectively. Defendants, collectively, may serve 25 interrogatories to Plaintiff.

c.  Plaintiff may serve 25 requests for admission to Defendants, collectively. Defendants, collectively, may serve 25 requests for admission to Plaintiff.

d.  Plaintiff may serve 25 requests for production to Defendants, collectively. Defendants, collectively, may serve 25 requests for production to Plaintiff.

e.  Other Planning or Discovery Orders: The parties anticipate their submission to the Court of a proposed protective order for its review and approval to accommodate the

11

exchange of confidential documents and other information during the discovery process.

### 9. CASE PLAN AND SCHEDULE

The plan and schedule must include the following items:

a. Deadline for Joinder of Parties and Amendment of Pleadings: **The filing of amended and supplemental pleadings will be made pursuant to Fed. R. Civ. P. 15.**

b. Discovery Cut-off: **April 15, 2023.**

c. Dispositive Motion Deadline: **May 15, 2023.**

d. Expert Witness Disclosure

   (1) Statement regarding anticipated fields of expert testimony, if any:

   a) <u>Plaintiff</u>: Plaintiff anticipates calling retained experts in the following possible fields: emotional distress damages and correctional safety. Plaintiff may retain any expert necessary for rebuttal and/or impeachment purposes.

   b) <u>Defendants</u>: Defendants anticipate calling retained experts in jail management procedures, OC spray removal, and any field designated by Plaintiff.

   (2) Plaintiffs propose a limit of two (2) retained expert witnesses per side.

   (3) The parties shall designate all affirmative experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a) (2) on or before **February 15, 2023**.

   (4) The parties shall designate all rebuttal experts and provide opposing counsel and any *pro se* party with all information specified in Fed. R. Civ. P. 26(a) (2) on or before **March 15, 2023.**

e. The parties will be limited to ten (10) depositions per side.

f. Deposition Schedule:

| Name of Deponent | Date of Deposition | Time of Deposition | Expected Length of Deposition |
|---|---|---|---|
| Juniper McGinn | TBD | TBD | 4 hours (Plaintiff's proposal)<br>7 hours (El Paso County Defendants' proposal) |
| Bill Elder | TBD | TBD | 4 hours |
| Deputy Doe 1 | TBD | TBD | 4 hours |
| Deputy Doe 2 | TBD | TBD | 4 hours |
| Deputy Doe 3 | TBD | TBD | 4 hours |
| Deputy Doe 4 | TBD | TBD | 4 hours |
| 30(b)(6) Representatives of the El Paso County Sheriff's Office | TBD | TBD | 4 hours |
| 30(b)(6) Representatives of the El Paso County Sheriff's Office | TBD | TBD | 4 hours |

f. Deadline for Interrogatories: All interrogatories must be served at least 30 days prior to the discovery cut-off.

g. Deadline for Interrogatories: All interrogatories must be served at least 30 days prior to the discovery cut-off.

**10. DATES FOR FURTHER CONFERENCES**

A Telephonic Final Pretrial conference will be held in this case on July 10, 2023 at 9:30 am before Magistrate Judge Maritza Dominguez Braswell. At the appointed time, each participant

13

should call 571-353-2301, and then enter ID # 617286044. The Court expects parties to utilize land line telephones rather than cellular devices whenever possible. If a party must utilize a cellular telephone, the caller must be in an indoor stationary position. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference, or July 3, 2023.

Upon the entry of the Final Pretrial Order, the presiding judge will set dates for further proceedings (pretrial, trial preparation and trial).

### 11. OTHER SCHEDULING ISSUES

a.  Statement of those discovery or scheduling issues, if any, on which counsel, after a good faith effort, were unable to reach an agreement: **None**.

b.  Statement of anticipated length of trial to the jury: **five (5) days.**

c.  Plaintiff: The Parties do not anticipate conducting any pretrial proceedings at the District Court's facilities in Colorado Springs, Grand Junction or Durango.

- El Paso County Defendants: The El Paso County Defendants believe it would be more efficient and economical for the trial to be held in the District Court's facility at 212 N. Wasatch Street, Colorado Springs, Colorado 80903, because this case arose in El Paso County (only a few miles from the District Court's Colorado Springs facility) and involves witnesses who worked in a facility located in El Paso County and who live in El Paso County.

### 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.Colo.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon

14

the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.Colo.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

### 13. AMENDMENTS TO DISCOVERY AND SCHEDULING ORDER

The Scheduling Order may be altered or amended only upon a showing of good cause.

DATED this 1st day of September, 2022.

BY THE COURT:

_____
Magistrate Judge

APPROVED:

*s/ Andy McNulty*
Andy McNulty
Mari Newman
KILLMER, LANE & NEWMAN, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
amcnulty@kln-law.com
mnewman@kln-law.com

*Attorney for Plaintiff*

*s/ Steven W. Martyn*
Nathan Whitney
Steven W. Martyn
200 S. Cascade Ave.
Colorado Springs, CO 80903
Phone: (719) 520-6458
nathanwhitney@elpasoco.com
stevenmartyn@elpasoco.com

*Attorneys for El Paso County Defendants*

15

# CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2022, I electronically filed the foregoing **SCHEDULING ORDER** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Nathan Whitney
Steven W. Martyn
El Paso County Attorney's Office
200 S. Cascade Ave.
Colorado Springs, CO 80903
terrysample@elpasoco.com
stevenmartyn@elpasoco.com

*s/ Charlotte Bocquin Scull*
Paralegal

16